UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TIMOTHY KLENK,

    Plaintiff,

    v.                                                                Case No. 3:23-CV-99-CCB

GARRISON PROPERTY AND
CASUALTY INSURANCE COMPANY,

    Defendant.

## OPINION AND ORDER

Before the Court is Defendant Garrison Property and Casualty Insurance

Company's ("Garrison") motion for partial summary judgment. (ECF 42). Plaintiff

Timothy Klenk opposes this motion. (ECF 49). The Court grants in part and denies in

part Garrison's motion for the following reasons.

### I.    RELEVANT BACKGROUND

This is an insurance case arising from a fire at Mr. Klenk's home. Mr. Klenk was

insured by Garrison at the time of the fire. After the fire, he submitted a claim to

Garrison. Garrison agreed that the fire was a covered event, but Mr. Klenk and Garrison

disagreed about whether the fire caused the complete destruction of Mr. Klenk's

dwelling. That dispute, and the dispute over whether Garrison acted in good faith

during its insurance investigation, are at issue in this motion.

The undisputed facts are these:

**a. The Insurance**

Garrison issued Mr. Klenk a Homeowner's Policy, effective from December 8, 2020, to November 1, 2021, that insured his home and its contents. (ECF 44-1). Two sections of that policy bear directly on this dispute: the Special Loss Settlement Endorsement and the Appraisal Provision.

*Special Loss Settlement Endorsement*

The general loss settlement provision of Mr. Klenk's policy, unmodified by the Special Loss Settlement Endorsement, provides as follows:

SECTION I – LOSS SETTLEMENT

We will not pay more than the amount of insurance that applies to the damaged, destroyed or stolen property as stated on the Declarations page unless such amount is increased due to ADDITIONAL COVERAGES or the Home Protector Coverage. Subject to the amount of insurance covered losses are settled as follows:

. . .

2. All items under Property We Cover – Dwelling Protection and buildings on the "residence premises" under Other Structures Protection. We will pay our cost to repair or our cost to replace the damaged property with similar construction and for the same use on the premises shown in the Declarations, subject to the following:

   a. When our cost to repair or replace the damaged property is less than $5,000 we will pay you the full replacement cost amount without deduction for depreciation.

b. When our cost to repair or our cost to replace the damaged property is greater than $5,000, and until actual repair or replacement is completed, we will pay only the "actual cash value", not to exceed our cost to repair or our cost to replace the damaged part of the property.

(1) To receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within one year after the date of loss, unless during this period you request in writing that this time limit be extended for an additional 180 days, and notify us within 30 days after the work has been completed.

(2) When repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or our cost to repair or replace the damaged part of the property, whichever is less.

(ECF 44-1 at 28). But Mr. Klenk's policy also contains the Special Loss Settlement Endorsement:

Coverage A – Dwelling Protection

In the event that your dwelling is completely destroyed solely by Fire or Windstorm to the extent that it has lost its identify and specific character as a building, for Coverage A – Dwelling Protection only, SECTION I – LOSS SETTLEMENT, item 2. is deleted and replaced by the following:

2. Under Coverage A – Dwelling Protection: We will pay you the total amount of insurance for Coverage A – Dwelling Protection shown in the Declarations.

To receive any additional Coverage A – Dwelling Protection payments for loss to your dwelling under any endorsement or other provisions of this policy, you must complete the actual repair or replacement of the dwelling. The replacement or repair must be completed within two

years of the date of loss, unless during this period you request in writing that this time limit be extended for an additional 180 days. You must then notify us within 30 days after the work has been completed.

When repair or replacement is actually completed, we will pay the lesser of:

a. The covered additional amount you actually and necessarily spend; or the amount it would cost us to repair or replace the dwelling.

b. In no event will we pay more than the applicable coverage limits stated in the policy or endorsements.

(*Id.* at 56). The parties agree that Garrison does not define "completely destroyed" and does not define what is meant by the phrase "to the extent that it has lost its identity and specific character as a building." (ECF 53 at 8).

*Appraisal Provision*

The appraisal provision of the policy provides as follows:

SECTION I – CONDITIONS

. . .

6. Appraisal. If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

4

Each party will:

    a. Pay its own appraiser; and

    b. Bear the other expenses of the appraisal and umpire equally.

Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve. This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the "actual cash value", replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us. This appraisal process and authority granted to the appraisers and the umpire can only be expanded or modified by written mutual consent signed by you and us.

(ECF 44-1 at 31–32).

### b. The Investigation

On January 3, 2021, there was a fire at Mr. Klenk's home in Elkhart, Indiana. (ECF 6 at 5). Mr. Klenk submitted a claim to Garrison for the damage to his home and its contents. (ECF 44-2 at 65:24–66:25). On January 4, 2021, Garrison General Adjustor Terry Stout contacted Mr. Klenk and told Mr. Klenk he would be handling the dwelling portion of the claim. (*Id.* at 75:8–22; ECF 44-4 at 20:21–21:5). Mr. Stout was aware that the policy included the Special Loss Settlement Endorsement, and he knew how to apply that provision. (ECF 48-7 at 82:13–83:17). He inspected Mr. Klenk's home on or

about January 5, 2021. (ECF 44-2 at 77:14–78:7). Mr. Klenk and Michael Thomas, the adjustor handling the contents portion of Mr. Klenk's claim, were also present. (*Id.*, ECF 44-4 at 112:25–113:6). Mr. Stout prepared an estimate to repair the damage to the home, fixing the replacement cost at $445,123.83 and the actual cash value at $348,979.98. (ECF 44-5 at 2). He sent this estimate to Mr. Klenk on or around January 13, 2021. (ECF 44-2 at 95:14–20; ECF 44-4 at 159:9–160:11). Mr. Klenk responded with an estimate from a contractor that it would cost $682,070.00 to completely tear down and rebuild the home. (ECF 44-4 at 162:23–164:12).

Mr. Stout then retained Timothy Lee, a structural engineer with Keystone Experts and Engineers, to inspect the home. (ECF 44-4 at 162:23–163:12). Mr. Lee drafted a report in which he opined that the home was repairable and did not require full demolition. (ECF 44-6 at 10). After Mr. Stout's investigation concluded, he sent a letter to Mr. Klenk on March 5, 2021, informing Mr. Klenk that Garrison had issued a check to him for $282,226.68, the actual cash value of the dwelling and other structures portion of the claim. (ECF 44-7 at 2). The letter also explained that depreciation would be recoverable if Mr. Klenk repaired or replaced the damaged property by January 3, 2022. (*Id.*)

On March 24, 2021, Mr. Stout sent Mr. Klenk a letter noting that Mr. Klenk disagreed with Garrison's assessment of his home's repair needs and warning Mr. Klenk that he needed to protect the property from future damage as it was currently

6

open to the elements. (ECF 44-8 at 5). On April 10, 2021, Mr. Klenk sent Mr. Stout information from brick contractors that Mr. Klenk believed supported replacing the brick on his home. (ECF 44-4 at 62:10–63:24). Mr. Stout discussed the bricks with Mr. Lee and determined not to make any revisions to his estimate to replace the brick. (*Id.* at 72:2–16, 156:4–24).

Garrison paid for 12 months of hotel expenses for Mr. Klenk and his wife, as well as boarding expenses for Mr. Klenk's 8 horses. (ECF 44-2 at 87:4–16, 114:5–14).

### c. The Appraisal

Mr. Stout discussed Mr. Klenk's claims with his supervisors, and they agreed to demand appraisal as provided for by the policy and to appoint Mr. Lee as Garrison's appraiser. (ECF 44-4 at 74:10–23; 86:14–18). On or about April 26, 2021, Mr. Stout sent Mr. Klenk a letter demanding appraisal on the dwelling portion of Mr. Klenk's claim. (ECF 44-9 at 3). The letter informed Mr. Klenk that Garrison had named Timothy Lee as its appraiser, and that Mr. Klenk had 20 days to name his own appraiser. (*Id.*) On May 18, 2021, and July 20, 2021, Garrison sent letters to Mr. Klenk reminding him of his obligation to provide appraiser information. (ECF 44-10; ECF 44-11). Mr. Klenk named Jim Sherman as his appraiser and objected to Garrison's retention of Mr. Lee as appraiser. (ECF 44-2 at 161:10–162:1). Both appraisers selected Andrew Sharer as the umpire for the appraisal dispute. (ECF 44-2 at 172:9–10).

On or about May 21, 2022, the appraisal was signed by Mr. Sharer and Mr. Sherman. (ECF 44-12 at 2). Mr. Lee did not sign. (*Id.*) The amounts appraised were $522,596.04 for the replacement cost and $414.012.78 for the actual cash value of the dwelling. (*Id.*) Based on this appraisal, Garrison paid Mr. Klenk an additional $63,517.53 on or about May 24, 2022. (ECF 44-2 at 201:24–202:9).

Throughout this entire period, Garrison understood Mr. Klenk's position to be that the fire caused the total loss of his property. (ECF 48-7 at 83:18–22; ECF 53 at 26).

## II.   LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To determine whether a genuine dispute of material fact exists, the Court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). But the Court will not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor will the Court conduct research or develop

8

arguments for the parties. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *see also*

*United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped

arguments without discussion or citation to pertinent legal authority are waived.").

To survive summary judgment, the nonmovant "cannot rest on the mere

allegations or denials contained in his pleadings, but must present sufficient evidence to

show the existence of each element of its case on which it will bear the burden at trial."

*Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal quotations

omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir.

2016). Summary judgment "is the put up or shut up moment in a lawsuit, when a party

must show what evidence it has that would convince a trier of fact to accept its version

of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)

(quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th

Cir. 2010).

**III.    ANALYSIS**

Garrison seeks partial summary judgment on four aspects of Mr. Klenk's claim.

First, it argues that it did not breach its contract with Mr. Klenk as to the dwelling

coverage because it paid the appraisal award. Second, it argues that it did not breach

the contract as to additional living expenses because it paid all expenses submitted.

Third, it argues that it did not breach its duty of good faith and fair dealing in handling

Mr. Klenk's fire claim because it promptly investigated the claim and paid what it

owed. Fourth, it argues that punitive damages may not be assessed against it as a matter of law because there is no clear and convincing evidence that it acted in a way that would justify them.

Mr. Klenk does not contest Garrison's second or fourth points, but he does respond to its first and third arguments. Responding to Garrison's first argument, Mr. Klenk contends there is a genuine issue of material fact as to whether Garrison breached the contract when it failed to treat Mr. Klenk's house as completely destroyed. He also argues that the appraisal award is invalid for the independent reason that Garrison's appraiser was not impartial. And in response to Garrison's third argument, he argues that Garrison's failure to define "completely destroyed" in the policy, followed by its choice to take the position that the house was not totally destroyed and invoke appraisal, constitutes sufficient evidence of bad faith for this claim to reach a jury.

Both parties agree that Indiana substantive law applies here. Under Indiana law, "[t]he construction of an insurance policy is a question of law for which summary judgment is particularly appropriate." *State Farm Mut. Auto Ins. Co. v. Gonterman*, 637 N.E.2d 811, 813 (Ind. Ct. App. 1994). Insurers are free to limit the coverage of their policies, but such limitations are only enforceable if clearly expressed. *W. Bend Mut. v. Keaton*, 755 N.E.2d 652, 654 (Ind. Ct. App. 2001) (citation omitted). When interpreting an insurance policy, the goal of the Court is to ascertain and enforce the parties' intentions. *Rice v. Meridian Ins. Co.*, 751 N.E.2d 685, 688 (Ind. Ct. App. 2001). If unambiguous, the

10

policy language will be given its plain and ordinary meaning. *McClain v. Madison Nat. Life Ins. Co.*, 2014 WL 4377458, at \*16 (N.D. Ind. Sep. 4, 2014) (citing *Auto-Owners Ins. Co. v. Benko*, 964 N.E.2d 886, 890 (Ind. Ct. App. 2012)). But where policy language is ambiguous, the policy is to be "construed strictly against the insurer and the policy language is viewed from the standpoint of the insured." *Allstate Ins. Co v. Dana Corp.*, 759 N.E.2d 1049, 1056 (Ind. 2001). An ambiguity exists if a provision of the policy is susceptible to more than one reasonable interpretation. *Buckeye State Mut. Ins. Co. v. Carfield*, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009). But the parties' different interpretations of policy language are not enough to create ambiguity on their own. *Id.*

### a. Dwelling Coverage

Garrison argues that it is entitled to summary judgment as to the dwelling coverage aspect of Mr. Klenk's breach-of-contract claim because it paid the appraisal award, and the appraisal clause of the contract was binding. In support, it points to undisputed evidence that, even though Garrison's own appraiser did not sign the award issued by the umpire, Mr. Klenk's appraiser did, and Garrison promptly paid the appraisal award. It urges this Court not to interfere with that appraisal award because "one who voluntarily submits to 'arbitration' of the amount due upon a fire insurance policy, except in exceptional circumstances, is bound by the award which results from 'arbitration' or appraisal." *Atlas Const. Co. v. Indiana Ins. Co.*, 309 N.E.2d 810, 814 (Ind. Ct. App. 1974).

Mr. Klenk makes two main arguments in response. First, he argues that the appraisal is not dispositive of the dwelling coverage aspect of his breach-of-contract claim because Garrison breached the contract either before or when it invoked appraisal. Second, he argues that even if Garrison did not breach the contract by invoking appraisal, it breached the contract when it failed to appoint an impartial appraiser.

Mr. Klenk first contends that a genuine issue of material fact exists as to whether Mr. Klenk's home was completely destroyed and thus triggered the Special Loss Settlement provision of the contract. In support, he points to the testimony of Mr. Klenk; Ferman Yutzy, a representative of Mr. Klenk's builder; and Joseph Granzotto, who inspected the property and photographed it in August 2022; as well as Mr. Stout's declaration and various photographs of the damage. Mr. Klenk testified to the extent of the fire, noting that he witnessed "open flames in the attic" and "flames coming out of the attic, or out of the roof," and that the fire department had to return three times to extinguish rekindling hotspots. (ECF 48-4 at 36:10–43:25). Mr. Yutzy, the builder, testified that he believed the property to be a "total loss" when he first saw it, and maintained that impression at his deposition. (ECF 48-5 at 73:5–11). The hole in the roof was "huge," he testified, and the amount of water used to put out the fire would lead to structural damage when it froze. (*Id.* at 70:4–13, 72:1–73:4). It was his opinion based on those observations that the fire "destroy[ed] the character" of the house. (*Id.* at 76:5–9).

Mr. Granzotto inspected the property on August 18, 2022, and prepared a report in which he described the house as having "sustained extensive damage from the fire, this includes a gaping opening in the roof that is over twenty-five feet in diameter." (ECF 48-6 at 19). Lastly, Mr. Stout noted following the inspection that "[t]he fire consumed the roof of a majority of the structure. . . . The interior of the risk was damaged heavily from either, [sic] water, smoke or soot and will therefore need gutted [sic]. The member has very high end finishes throughout most of the risk." (ECF 48-2 at 1).

If Mr. Klenk's home was completely destroyed, he contends that Garrison breached the contract by failing to pay out under the Special Loss Settlement Endorsement and instead invoking appraisal. As Mr. Klenk points out, the appraisal provision of the contract does not apply to coverage debates. Under the contract, appraisers "are not authorized to determine coverage, . . . or any other contractual issues that may exist." (ECF 44-1 at 32). The contract also provides that neither Mr. Klenk nor Garrison may use the appraisal award "in any proceeding concerning coverage, . . . or other contractual issues." (*Id.*) Thus, he argues that the appraisal does not control if the dispute is over coverage, not amount of settlement.

In essence, Mr. Klenk argues that Garrison mischaracterizes the issue here as a dispute over the *degree* of coverage: the parties agree on coverage and disagree over the amount due to Mr. Klenk. If this were such a question of degree, invocation of appraisal would be appropriate because the contract provides that if the parties "fail to agree on

13

the amount of loss, either may demand an appraisal of the loss." (ECF 44-1 at 31). But,

Mr. Klenk contends, this is actually a dispute over the *type* of coverage: Mr. Klenk

thinks the Special Loss Settlement Endorsement was triggered by the total destruction

of his house, and Garrison thinks that his house was not totally destroyed and therefore

the endorsement was not triggered. This, according to Mr. Klenk, is a question of

coverage for which appraisal is explicitly not authorized under the terms of the

contract. On this basis, he argues that Garrison breached the contract when it

improperly invoked appraisal.

Garrison vigorously disputes this. First, it argues that, as a threshold issue, the

total destruction of a home is a question that requires expert testimony. As Mr. Klenk

has not designated an expert, Garrison contends that he cannot prove total destruction

and therefore the issue should not go to the jury. In support, Garrison cites a string of

cases from other districts that stand for the proposition that experts are often used to

prove total loss of a dwelling for insurance purposes. *See Hayes v. Allstate Ins. Co.*, 1984

U.S. Dist. LEXIS 24167, at *17 (S.D. Ind. 1984) (relying on "credible testimony of experts

in the field" to determine that a home was a "total loss"); *Kennett v. USAA Gen. Indem.

Co.*, 2019 U.S. Dist. LEXIS 117100, at *17–18 (E.D. La. 2019) (noting the testimony of

experts as to whether a property was a total loss); *HM Hotel Props. v. Peerless Indem. Ins.*,

2013 U.S. Dist. LEXIS 120216, at *10–11 (D. Ariz. 2013) (noting that expert was necessary

to prove "sophisticated repair costs" and therefore finding that plaintiff could not

14

present evidence of repair costs at summary judgment for failure to designate expert); *Providence Piers, LLC v. SMM New Eng., Inc.*, 2015 U.S. Dist. LEXIS 174489, at \*26–27 (D.R.I. 2015) (finding that "fact testimony by a builder or repairer is generally limited to observations of damaged property and to the cost of work actually performed while estimating the cost of future work is generally the subject of expert testimony").

These cases, however, miss the thrust of Mr. Klenk's argument. The contract provides that if Mr. Klenk's property were to be "completely destroyed solely by Fire or Windstorm to the extent that it has lost its identity and specific character as a building," the Special Loss Settlement Endorsement would be triggered. (ECF 44-1 at 56). At most, the cases cited by Garrison establish that experts are often used to prove total loss of a dwelling, and that assessment of sophisticated repair costs is the province of experts, not laymen. No authority cited precludes non-expert testimony about whether a house was completely destroyed. In fact, *Providence Piers* even suggests that "observations of damaged property" are appropriate fact testimony from "a builder or repairer." 2015 U.S. Dist. LEXIS 174489, at \*26–27. Mr. Klenk does not rely on lay testimony to establish the precise cost of repairs or some other technical matter; he offers lay testimony to support his argument that his house was "completely destroyed" by fire such that it "lost its identity and specific character as a building." (ECF 44-1 at 56). Testimony about the loss of the identity and specific character of a house does not clearly require "scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. Nor does the

meaning of "completely destroyed." *See McClain*, 2014 WL 4377458, at *16 (citing *Benko*, 964 N.E.2d at 890) (finding that unambiguous policy language is to be given its plain and ordinary meaning). Mr. Klenk is not barred from presenting lay evidence on this issue at summary judgment.

Garrison also argues that even if this dispute involves a question about the type of coverage, the appraisal award should still bind. In support, it cites *Villas of Winding Ridge v. State Farm Fire and Cas. Co.*, 942 F.3d 824, 831 (7th Cir. 2019), for the proposition that "the mere presence of coverage disputes . . . in addition to an amount of loss dispute does not negate an appraisal award." But the facts of that case differ significantly from those here. For one, the dispute before the Seventh Circuit involved Winding Ridge's objection that its policy covered matching shingles and the replacement shingles paid for by State Farm did not match the others. In fact, the elision in Garrison's quotation refers to this. The entire quotation reads, "the mere presence of coverage disputes (like matching shingles) in addition to an amount of loss dispute does not negate an appraisal award." *Id.* Here, the parties are not quibbling over matching shingles. If the house fire completely destroyed Mr. Klenk's home, as he contends, Garrison had a different set of obligations under a different coverage provision. The issue here is which type of coverage applied to Mr. Klenk's loss, not whether the appraiser failed to consider a certain aspect of coverage during appraisal.

Furthermore, the coverage issue is not "mere[ly] presen[t]" in this case. *Id.* It is the entirety of the dispute. This case involves two distinct types of coverage. One, the standard loss settlement provision, obligates Garrison to pay the amount necessary to repair or replace Mr. Klenk's insured property, subject to certain conditions. The other, the Special Loss Settlement Endorsement, obligates Garrison to pay the "total amount of insurance" should its triggering condition of complete destruction by fire or wind be met. Mr. Klenk is not arguing that the appraisal amount should be adjusted upward due to an incidental coverage issue decided in the appraisal. He is arguing that Garrison applied the wrong type of coverage to his loss.

Garrison next contends that even if the Court considers Mr. Klenk's evidence on this issue, it is not sufficient to create a genuine issue of material fact. In support, it points to the deposition testimony of Mr. Yutzy and Mr. Granzotto, as well as Mr. Stout's report, Mr. Lee's report, and various photographs taken of the house. Mr. Yutzy testified that Mr. Klenk asked him for an estimate to build a new home. (ECF 52-3 at 17:17–23). Mr. Granzotto testified that he did not inspect Mr. Klenk's home until 19 months after the fire. (ECF 52-4 30:5–8). His opinion that the structure should be taken down to the foundation was based, in part, on the exposure of the house to the elements in those intervening months. (*Id.* at 50:15–22). Mr. Stout inspected Mr. Klenk's home two days after the fire and determined that it could be repaired. (ECF 44-4 at 112:25–

113:6; ECF 44-5). Lastly Mr. Lee inspected Mr. Klenk's home the month after the fire and opined that it could be repaired. (ECF 52-2 at 1, 12).

The photographs presented by both parties do not clearly show whether the house was completely destroyed. From some angles, there is minimal damage. (*See, e.g.*, ECF 53 at 14). From others, the damage appears extensive. (*See, e.g.*, ECF 47 at 25). A reasonable jury could draw conclusions in favor of either party from the photographic evidence in the record. The other evidence designated by the parties follows the same pattern. Though Garrison has identified evidence that may diminish the persuasiveness of the evidence designated by Mr. Klenk, neither party presents a decisive case. For instance, Garrison has identified testimony that shows Mr. Yutzy was focused on a rebuild. This does not blot out Mr. Yutzy's testimony that the fire destroyed the character of the house due in part to the "huge" hole in the roof and structural damage from freezing water, though it may make his testimony less persuasive to a jury. Nor will Mr. Stout's opinion that the home could be repaired blot out his account of the extensive damage to the property. This kind of conflicting evidence presents an issue of fact, not law.

It is "axiomatic" that this Court "may not weigh conflicting evidence or make credibility determinations" at summary judgment. *Whitaker v. Dempsey*, 144 F.4th 908, 917 (7th Cir. 2025). Instead, the burden rests on Garrison to show that no reasonable jury could find for Mr. Klenk. Here, it has not done so. There are genuine issues of

18

material fact as to whether the house was completely destroyed that require a factfinder to resolve.[1]

Mr. Klenk also independently argues that the appraisal award should not bind because the appraiser appointed by Garrison was not impartial. In support, he points to the undisputed fact that Garrison's appraiser, Mr. Lee, had already been employed by Garrison to look into Mr. Klenk's claim. A reasonable jury, he argues, could find that Mr. Lee's previous employment by Garrison rendered him partial to Garrison in breach of the appraisal provision. Garrison responds that Mr. Lee's previous employment does not create actual bias. It cites the case of *B.R.S. Real Est., Inc. v. Certain Underwriters at Lloyd's*, 682 F. Supp. 3d 204, 208–09 (D.R.I. 2023) for the proposition that an appraiser's previous employment as an engineer by an insurance company on the claim he is appointed to appraise may raise the appearance of bias but is not actual evidence of bias. Though this case is out-of-circuit, its reasoning is persuasive: "[u]nlike an attorney, neither an engineer nor an appraiser has the same duty of zealous advocacy on behalf of a client," and therefore prior employment alone is not evidence of bias. *See B.R.S.*, 682 F. Supp. 3d at 210. The mere fact of Mr. Lee's previous employment is not evidence of

---

[1] Garrison also argues that it is entitled to summary judgment on the grounds that Mr. Klenk failed to protect the property from damage after the loss as required by the contract. Mr. Klenk's argument here, though, is that the house was completely destroyed, triggering the Special Loss Settlement Endorsement. In essence, he contends that there was no insured dwelling left to protect. Thus, the fact that "Garrison has reserved the right to deny coverage for any damage caused by the failure to protect the property," (ECF 43 at 8), is beside the point because Mr. Klenk maintains that the dwelling was completely destroyed, triggering an immediate duty of payment under the Special Loss Settlement Endorsement.

bias toward Garrison, and Mr. Klenk offers no evidence of bias besides this to show that Mr. Lee was not impartial.

Bearing in mind its duty to construe all facts and draw all reasonable inferences in Mr. Klenk's favor, the Court concludes that Mr. Klenk has put forward sufficient evidence for a reasonable jury to find that his house was completely destroyed by the fire. If his house was completely destroyed, appraisal was inappropriate under the contract because the disagreement between the parties was over the type of coverage that applied, not the amount of coverage. Thus, the appraisal award would not bind, and a reasonable jury could find that Garrison breached the contract by failing to pay Mr. Klenk as provided for in the Special Loss Settlement Endorsement. But there is insufficient evidence for a reasonable jury to find that Garrison's designation of Mr. Lee as impartial appraiser, after already employing Mr. Lee to provide a report on Mr. Klenk's loss, breached the appraisal clause of the contract.

### b. Living Expenses

Garrison moves for summary judgment that it did not breach the contract as it relates to additional living expenses. In support, it points to undisputed evidence that it paid the full 12 months of living expenses for Mr. Klenk, his wife, and his horses. Mr. Klenk does not contest this, and the Court sees no contradictory evidence in the record. Accordingly, the Court finds that summary judgment is appropriate on this issue.

### c.  Good Faith and Fair Dealing

Garrison also moves for summary judgment that it did not breach its duty of good faith and fair dealing in handling Mr. Klenk's fire claim. In support, it argues that it promptly investigated Mr. Klenk's case and paid what it believed it owed on the dwelling coverage. Any delays in the process, it contends, were the result of Mr. Klenk's failure to name an appraiser within the time period specified by the contract. Furthermore, the appraisal award was signed by Mr. Klenk's appraiser and the umpire. Though Garrison's appraiser did not sign, Garrison promptly paid out the appraisal award as required by the contract.

Mr. Klenk responds that Garrison chose not to define "completely destroyed," nor elaborate on "specific character as a building," two parts of the condition that would trigger the operation of the Special Loss Settlement Endorsement. Because these phrases are susceptible to different interpretations by different people, he argues, Garrison had a duty to construe them in favor of Mr. Klenk. Instead, Garrison took the position that the house had not been completely destroyed in violation of its duty to construe ambiguity in Mr. Klenk's favor.

To show a breach of the duty of good faith and fair dealing, or "bad faith," Mr. Klenk would need to put forward evidence that Garrison acted with "dishonest purpose, moral obliquity, furtive design, or ill will," *Colley v. Indiana Farmers Mut. Ins. Group*, 691 N.E.2d 1259,1261 (Ind. Ct. App. 1998), and that evidence would need to be

21

"clear and convincing," *Freidline v. Shelby Ins. Co,* 774 N.E.2d 37, 40 (Ind. 2002). It is well established that "a good faith dispute about whether the insured has a valid claim" will not give rise to a bad-faith cause of action. *Id.* On the other hand, to escape liability on a bad-faith claim, Garrison must merely show that it had a "rational, principled basis" for denying liability. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 520 (Ind. 1993).

Though the Court has a duty to draw reasonable inferences in Mr. Klenk's favor at summary judgment, here there is simply no evidence of bad faith from which to draw such inferences. Mr. Klenk asks the Court to take the fact that Garrison drafted policy language Mr. Klenk believes is ambiguous, combine it with the fact that Garrison disagreed with Mr. Klenk about its interpretation, and conclude that Garrison invoked appraisal as part of a "furtive design" to avoid paying Mr. Klenk what he was due. This leap is unreasonable. It is not clear that the policy language is ambiguous, and Garrison does not commit the tort of bad faith by disagreeing with Mr. Klenk as to its liability.

Furthermore, though the Court has determined that a reasonable jury could conclude that appraisal was improper, there is undisputed evidence supporting the argument that Garrison had a "rational, principled basis" for invoking appraisal. *Erie,* 622 N.E.2d at 520. Garrison engaged a building engineer who concluded that the home was repairable, the parties were unable to agree on a settlement, and appraisal was provided for in the policy. Mr. Klenk, on the other hand, has put forward no evidence of bad faith. Instead, he argues first that the policy language is ambiguous, then cites

22

*Rex Insurance Company v. Baldwin*, 323 N.E.2d 270, 274 (Ind. Ct. App. 1975), for the

proposition that bad faith may be imputed when policy provisions are sufficiently clear,

and insurance companies dispute the amount of liability anyway. Both cannot be true,

and neither are evidence. Summary judgment is proper on this claim. [2]

### d. Punitive Damages

Garrison also seeks summary judgment on the issue of punitive damages.

Punitive damages in this context may only be based on the tort of bad faith. *See Erie*, 622

N.E.2d at 520 ("[T]he . . . independent tort for the breach of the insurer's obligation to

exercise good faith provides the tort upon which punitive damages may be based.").

Because the Court has found that summary judgment is appropriate on Mr. Klenk's

bad-faith tort claim, summary judgment is also appropriate on this issue.

## IV.   CONCLUSION

For these reasons, the Court **GRANTS** Garrison's motion for summary

judgment, (ECF 42), as to the issues of living expenses, good faith and fair dealing, and

punitive damages. It **DENIES** Garrison's motion as to the dwelling coverage aspect of

---

[2] Garrison also contends that the undisputed evidence shows it complied with its duty of good faith and fair dealing regarding its investigation and payment of coverage of the contents of Mr. Klenk's home. Because this is supported by the undisputed evidence and Mr. Klenk does not dispute it, the Court determines that there is no genuine issue of material fact as to this issue.

Mr. Klenk's breach-of-contract claim.


SO ORDERED on March 30, 2026.


                                    /s/*Cristal C. Brisco*
                                    CRISTAL C. BRISCO, JUDGE
                                    UNITED STATES DISTRICT COURT